## THE SANTA ELENA.

(District Court, S. D. New York. May 10, 1920.)

1. Aliens ⚖➝58—Evidence held to show alien on passenger list was same as seaman.

   On libel by the United States to recover the penalty imposed by Immigration Act Feb. 5, 1917, § 10 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼ee), from a vessel for permitting an alien passenger to land therefrom, evidence *held* to show that the alien who was carried on the passenger list was the same person as an alien entered on the ship's articles as a seaman under another given name.

2. Aliens ⚖➝58—Alien formally on ship's articles as "American seaman."

   An alien, who had been discharged in a foreign port from an American vessel for illness, and was therefore entitled to the protection of Rev. St. §§ 4577, 4578, 4581, 4804, and 4805 (Comp. St. §§ 8368, 8369, 8372, 9191, 9193), and who was brought to this country at the American consul's request by another vessel, on whose articles he was formally entered as a member of the crew at a wage of 25 cents a month, was, within Immigration Act Feb. 5, 1917, an "American seaman," so that the

---

⚖➝For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ship is liable for a penalty under section 32 of that act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼r), only if there was negligence in permitting him to land.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, American Seaman.]

3. **Aliens** ☞58—**Evidence held not to show negligence in permitting alien seaman to land.**

Where an alien seaman on an American vessel, who was sick when the vessel arrived, was subsequently removed by the Marine Hospital Service for hospital treatment, after which he was discharged, the master not having reported such removal to the immigration authorities, nor having received from them any instructions as to the care of the alien, there was no negligence, subjecting the vessel to the penalties prescribed by Immigration Act Feb. 5, 1917, § 32 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼r).

Libel by the United States against the motor vessel Santa Elena. Libel dismissed.

Francis G. Caffey, U. S. Atty., of New York City (J. Joseph Lilly, of New York City, of counsel), for the United States.

James A. Hatch, of New York City (John T. Carpenter, of New York City, of counsel), for claimant.

KNOX, District Judge. Upon August 22, 1918, the motor vessel Santa Elena arrived in New York from Barbadoes. She was boarded by two inspectors from the Bureau of Immigration, who, after an inspection of the ship's company, gave a direction in writing to the master to detain on board one Carl J. Anderson, who was ill. Anderson was a Swede, and his name appeared on the passenger list, and it was assumed by the inspectors that such was his status. If Anderson were a passenger, and not a seaman, his unlawful entry into the United States would subject the ship and the master to the provisions of section 10 of the Immigration Act of February 5, 1917 (Comp. St. 1918, Comp St. Ann. Supp. 1919, § 4289¼ee).

The master made arrangements to furnish Anderson with food and hired a private detective to watch him. Two days later, the master, having heard nothing more from the inspectors, communicated with the Marine Hospital upon Staten Island, and shortly thereafter an ambulance arrived, accompanied by a person wearing a United States Navy uniform. To this person the master told what had been said to him by the inspectors, and the officer from the Marine Hospital then inquired if Anderson's name was upon the ship's articles. Upon receiving an affirmative reply, Anderson was examined by the officer, who remarked:

"If this man is not entitled to hospital treatment, then no man ever will be. I'll take him."

Anderson was placed in the ambulance, which departed. It appears that he remained at the hospital for about eight weeks and was then discharged. Nothing more was heard by the master from the immigration officials, and the matter was apparently forgotten, until steps were taken to impose liability upon the ship for permitting the

alleged unlawful entry of Anderson into the United States; the libel for that purpose being laid under section 10 of the Immigration Act.

The answer to the libel is a general denial, and upon the respondent's case the defense is made that Carl J. Anderson is, as a matter of fact, the same man who, under the name of Edwin Anderson, appears upon the ship's articles, and that therefore the liability, if any, against the ship, is to be measured by the provisions of section 32 of the Immigration Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼r). This section has to do with the unlawful entry into the United States of seamen. Section 1 of the Immigration Act of February 5, 1917 (section 4289¼a), provides:

"That the term 'seaman' as used in this act shall include every person signed on the ship's articles and employed in any capacity on board any vessel arriving in the United States from any foreign port or place."

The primary question, therefore, is to determine if the passenger, Carl J. Anderson, and the seaman, Edwin J. Anderson, are one and the same. Upon July 10, 1918, seven seamen, among them E. Anderson, were discharged from the American schooner Lizzie M. Parsons, at Barbadoes. Among the names of the persons so discharged, I find, in addition to that of Anderson, J. Van der Pol, C. Griis, and W. J. Arnst.

The master testifies that at no time while the Santa Elena was under his command did she carry passengers in the ordinary acceptation of the term. He also deposes that while at Barbadoes the American consul informed him that he had at that port several seamen who had been paid off the Lizzie M. Parsons; that seamen were needed in the United States, and the captain was urged to bring the men to this port. It would seem from sections 4577, 4578, 4581, 4804, 4805, of the Revised Statutes (Comp. St. §§ 8368, 8369, 8372, 9191, 9193), and Executive Order of October 21, 1915, that even aliens employed as seamen on vessels of American registry are entitled to certain very definite privileges, one of which is that of being returned to the United States when discharged in a foreign port on account of injury or illness, or when they become destitute under certain circumstances in foreign countries. Upon their arrival within the United States such seamen are subject to special rules that are not applicable to aliens who are not what may be termed "American seamen."

The master of the Santa Elena, having little alternative to do otherwise, assented to the consul's request and accordingly signed on, as members of his ship's company, four men as follows: C. Griis, E. Anderson, W. J. Arnst, and J. Van der Pol, corresponding, as is seen, with the names of the men discharged from the Parsons. Anderson's wages were to be 25 cents a month. He was sick when discharged from the Parsons, he was sick when he arrived in New York, and his position as a seaman on board the Santa Elena was doubtless nothing more than formal.

[1] The names of Griis, Arnst, Anderson, and one Oscar J. Levy were for some reason entered by the purser upon the ship's passenger list. This would be of small concern, were it not that Anderson's name was entered as "Anderson, Carl J.," and from this the confusion

of identity has arisen. However, the matter is considerably simplified when recourse is had to the crew list of the Lizzie M. Parsons, whereon it appears that the Edwin Anderson, whose name appears thereon, gave as his next of kin his father, C. J. Anderson. The description of Edwin Anderson and the so-called Carl J. Anderson, passenger on the Santa Elena, correspond in almost exact terms, and I have no hesitancy in finding that the so-called passenger, Carl J. Anderson, was the same person as seaman, Edwin Anderson. There was simply a mistake in the entry of Anderson's Christian name, or it is possible that, in addition to the name Edwin, Anderson also had Carl J. as a part of his name.

[2] Now, being on the ship's articles, even though formally, Anderson was, for the purposes of the Immigration Act, a seaman. Indeed, under Judge Foster's decision in Laura M. Lunt (D. C.) 170 Fed. 204, he was an "American seaman," and under no possible construction, I think, can the ship be held to an accountability more strict than that set forth in section 32. The measure of that accountability is negligence, and this I am unable to find.

[3] Upon arrival at New York, Anderson was entitled to receive medical treatment, and to receive it at the Marine Hospital. This was not accorded him through the immigration officials, and in pursuance of a humane instinct the master took steps to secure for Anderson that which was his due. While Anderson's detention at the hospital continued, the master and the ship were relieved from responsibility for safe-keeping. Section 15 of the Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼hh).

It would have been better, of course, had the master, in view of the notice he received from the inspectors who boarded his ship, notified the immigration officials of what had happened; but he also had, I think, the right to expect that he would himself receive some further word from the inspectors as to the course he should pursue with respect to Anderson.

I fail to find a degree of negligence sufficient to sustain the libel, and it is accordingly dismissed.

⚖➙For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes